# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

EAST MAINE BAPTIST CHURCH, et al.,     )
                                           )
       Plaintiffs,                      )
                                           )
       v.                          )     No. 4:05-CV-962 CAS
                                           )
UNION PLANTERS BANK, N.A., et al.,      )
                                           )
       Defendants.                   )

## MEMORANDUM AND ORDER

This matter is before the Court on the motions of defendants Regions Bank ("the Bank"); Marshall & Stevens, Inc. ("M&S"); and Michael Doster and Doster, Robinson, James, Hutchison & Ullom, P.C. ("Doster defendants") to decertify the class action.[1] For the following reasons, the Court will grant in part and deny in part defendants' motions to decertify.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed this class action in Missouri state court on November 12, 1999. Plaintiffs are the owners of various bonds issued in 1995 by Arch Leasing Corporation Trust ("ALCT"). Plaintiffs bring this action on behalf of themselves and approximately 650 other purchasers of ALCT bonds.

---

[1]    The Doster defendants' motion to decertify adopted and incorporated the motions to decertify filed by defendants M&S and the Bank. The motion did not raise any arguments in support of decertification that were not previously raised by M&S and the Bank. Similarly, defendants Robert A. Chlebowski and Lynnette A. Frownfelter have joined in the motions to decertify filed by defendants M&S and the Bank.

Plaintiffs seek to recover damages for losses they allegedly incurred on the bonds, and have asserted a variety of claims against the indenture trustee, the appraiser, and various officers and attorneys.[2]

On May 12, 2003, this action was originally certified as a class action by the state court under Rule 52.08 of the Missouri Rules of Civil Procedure. After class certification, defendants sought a writ of prohibition in the Missouri Supreme Court ordering the judge of the state court to decertify the class action because of conflicts of interest between class counsel and the class. Defendants argued that class counsel's acceptance of a substantial amount of money from some defendants to initiate this class action against other defendants created this conflict of interest. The Missouri Supreme Court agreed, and issued a writ of prohibition. The court remanded the case to find an appropriate remedy or to decertify the class. See Union Planters Bank v. Kendrick, 142 S.W.3d 729 (Mo. 2004).

On November 24, 2004, presumably as a result of the issuance of this writ, class counsel withdrew from its representation of the class and current counsel entered as attorneys for the class. On June 2, 2005, plaintiffs filed a Third Amended Petition. The Third Amended Petition added eight new tort claims; added two defendants; dismissed two named class representatives; and asserted removable federal causes of action. The eight new claims allege fraudulent misrepresentation (Counts XV and XXI); conspiracy to defraud (Count XVI); negligence (Count XXIII); negligent misrepresentation (Counts XVIII and XXII); breach of fiduciary duty (Count XIX); and assumpsit (Count XX).

---

[2]     As the Missouri Supreme Court has recognized, "[t]he underlying facts are complex." Union Planters Bank, N.A. v. Kendrick, 142 S.W.3d 729, 737 (Mo. 2004). For a detailed recitation of these facts, see Union Planters Bank, 142 S.W.3d at 732-35.

On June 15, 2005, the Bank removed plaintiffs' action to this Court because the Third Amended Petition invoked the Court's federal question jurisdiction. At the time of removal, the state court had certified for class treatment plaintiffs' Second Amended Petition. No court has yet to consider whether the Third Amended Petition, including its newly-added claims, is certifiable as a class action under Federal Rule 23. Additionally, no court has considered whether current class counsel meet the adequacy of counsel requirement of Federal Rule 23(g). On August 22, 2006, defendants filed the instant motions to decertify the class action.

## II.     DISCUSSION

### A.     The Court Has a Continuing Duty to Assure Compliance with Rule 23(a)

The Court has an ongoing duty to assure that the class claims in this action are certifiable under Federal Rule 23. See Petrovic v. Amoco Oil Co., 200 F.3d 1140, 1145 (8th Cir. 1999); Briggs v. Anderson, 796 F.2d 1009, 1017 (8th Cir. 1986) (citing General Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982)). This duty continues even after class certification. See Hervey v. City of Little Rock, 787 F.2d 1223, 1227 (8th Cir. 1986); see also Fed. R. Civ. P. 23(c)(1)(C) ("An order under Rule 23(c)(1) may be altered or amended before final judgment"). This duty to assure compliance with Rule 23 is especially pertinent to the instant case because plaintiffs have amended their petition since class certification in the state court and have added new tort claims that have not been certified as class claims. See Hebert v. Monsanto Co., 682 F.2d 1111, 1132 (5th Cir. 1982) ("Presented with the amended complaint, or even without such amendments, the prior judge had a right to review his prior determination as to class."); Zenith Labs, Inc. v. Carter-Wallace, Inc., 64 F.R.D. 159, 164 (D.N.J. 1974) ("When Plaintiff chose to change its complaint by amendment, it destroyed the vitality of the prior adjudication of class which was based on a different lawsuit."). Moreover, the state court

3

certified the class pursuant to Missouri Rule of Civil Procedure 52.08. This Court must analyze the class action for compliance with Federal Rule 23. See Fed. R. Civ. P. 81(c).

Plaintiffs argue that re-examination of class certification is not warranted because no "significant intervening event" has occurred since the class was certified by the state court. (Pl. Resp. at 3). Plaintiffs also state that the state court and this Court have had occasion to re-examine the class certification issue pursuant to Missouri Rule 52.08 and Federal Rule 23, and "[t]he issues have been carefully considered and decisions or orders rendered." (Pl. Resp. at 4). Based on a review of the state court filings, the state court did not reconsider its class certification order after plaintiffs filed their Third Amended Petition. Nor has this Court conducted the "rigorous analysis" required to determine whether the claims presented are sufficient to warrant class treatment. See General Tel. Co. v. Falcon, 457 U.S. at 161. In any event, no court has conducted any analysis of the newly-amended petition under Federal Rule 23.

The Court finds that it has the duty to ensure the purported class claims asserted in the Third Amended Petition comply with the requirements of Rule 23. The removal of the case to the federal court does not insulate the prior determination from the rigorous review required by Rule 23. See generally ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:29 (4th ed. 2002). Moreover, when a state-court certified class action is removed to federal court, it arrives at the federal court as a certified class in the same procedural posture as it left the state court. See Matter of Meyerland Co., 960 F.2d 512, 520 (5th Cir. 1992) ("A case removed from state court simply comes into the federal system in the same condition in which it left the state system.") (citations omitted). The class action that was certified in the state court was based on the Second Amended Petition.

Thus, the Court finds that it has the duty to evaluate the Third Amended Petition for purposes of class certification.

### B.    Burden of Proof

The plaintiff bears the burden of demonstrating that the requirements of Rule 23 have been satisfied. Bishop v. Committee on Prof'l Ethics and Conduct, 686 F.2d 1278, 1288 (8th Cir. 1982). Specifically, plaintiffs must meet the prerequisites of Rule 23(a) and one additional set of alternative requirements under Rule 23(b). The Court has broad discretion in determining whether an action may be maintained as a class action. Ad Hoc Comm. to Save Homer G. Phillips Hosp. v. City of St. Louis, 143 F.R.D. 216, 219 (E.D. Mo. 1992). However, a class action cannot be certified unless the trial court is satisfied, after rigorous analysis, that the prerequisites of Rule 23 have been met. See General Tel. Co. v. Falcon, 457 U.S. at 161.

A district court also has the discretion to decertify a class by amending the order granting the certification "if the court finds that certification should not have been granted or is no longer appropriate." 5 MOORE'S FEDERAL PRACTICE § 23.87 (Matthew Bender 3d ed. 2006). In considering a defendant's motion for decertification, the Court follows the legal standard required for class certification. The Court accepts as true the facts pleaded in the controlling complaint, the Third Amended Petition, and focuses its inquiry as to whether or not the requirements of Rule 23 have been met. See Ellis v. Elgin River Boat Resort, 217 F.R.D. 415, 419 (N.D. Ill. 2003); Chisolm v. TranSouth Fin. Corp., 194 F.R.D. 538 (E.D. Va. 2000).[3]

---

[3]    Defendants caption their motions as motions to decertify, however, the state court never certified as class claims the newly-added tort claims (Counts XV, XVI, XVIII, XIX, XX, XXI, XXII, and XXIII). Because the legal standard required for motions to certify the claims is identical to the legal standard required for motions to decertify the claims, and because the burden of proof is identical with respect to both, the Court will address defendants' motions to decertify the newly-

### C.    **The Indenture Agreement as a Bar to Plaintiffs' Claims**

In its motion to decertify, M&S asserts that plaintiffs' claims are barred by their failure to comply with the Indenture Agreement's no-action clause, and therefore plaintiffs lack standing to bring this action.  In asserting that the no-action clause bars plaintiffs' claims, M&S argues the merits of plaintiffs' action rather than whether it can be maintained as a class action.  While M&S might have a legitimate defense based on the Indenture Agreement, this defense does not affect the Court's determination of the Rule 23 requirements.  The named plaintiffs do not need to demonstrate a probability of success on the merits to seek class certification.  See Eisen v. Carlisle and Jacquelin, 417 U.S. 156, 178 (1974) ("[T]he question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").  A motion for class certification does not turn on the court's evaluation of the merits of the parties' legal or factual claims.  Id.  Typically, the court must conduct a limited inquiry as to the merits of the case at the class certification stage, however, this inquiry is limited to questions regarding whether plaintiffs have adequately met the requirements of Rule 23.  See Blades v. Monsanto Co., 400 F.3d 562, 567 (8th Cir. 2005).  The Eighth Circuit has cautioned that "[t]he closer any dispute at the class certification stage comes to the heart of the claim, the more cautious the court should be in ensuring that it must be resolved in order to determine the nature of the evidence the plaintiff would require." Id.

M&S's argument that the no-action clause bars relief does not challenge to the propriety of certifying the class action.  Whether defendants' defense is likely to succeed on the merits does not concern the Court on this motion for class certification.  Rather, of concern is whether the manner

_____

added claims.

of proof will vary substantially among the class members. Because each class member is subject to the same defense regarding the no-action clause, the manner of proof will not vary. Defendants' argument regarding the no-action clause is more appropriately asserted in a pre-trial motion to dismiss or for summary judgment.

Moreover, even assuming that plaintiffs' claims are barred by the no-action clause, M&S has not addressed how this would affect plaintiffs' standing to bring the class action. Plaintiffs have constitutional standing to bring a class action if they allege and show that they have personally been injured by defendant's conduct. See Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26 (1976); see also CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS § 2:6. At the core of the standing doctrine is the requirement that a plaintiff allege personal injury traceable to the defendant's allegedly unlawful conduct that is likely to be redressed by the requested relief. Id. The Third Amended Petition presents sufficiently well-pleaded allegations to show that plaintiffs have suffered injury as a result of defendants' alleged wrongful acts. Regardless of whether the Indenture Agreement's no-action clause might eventually bar the relief plaintiffs seek, plaintiffs have standing to assert their claims and those of the class.

### D. The Predominance Inquiry

In their motions to decertify the class, defendants M&S and the Bank argue that various claims of plaintiffs are not suitable for class treatment because individual issues predominate over class issues. Defendant M&S argues that plaintiffs' claims for negligent misrepresentation and conspiracy to defraud (Counts XVI and XVIII) are not suitable for class treatment because each class member would be required to prove their individual reliance on the alleged misrepresentations. The Bank argues that plaintiffs' claims for breach of fiduciary duty and assumpsit (Counts XIX and XX)

cannot meet Rule 23's commonality or predominance requirements because a separate choice of law analysis would apply to each class member's claims, requiring the application of several states' laws. The Bank states that these choice of law issues would overshadow the common issues of law and predominate over issues common to the class. Additionally, the Bank challenges plaintiffs' breach of contract claims (Counts I, II, III, X, and XIV), arguing that these claims are barred by the statute of limitations. To preserve these claims, the Bank states that plaintiffs will have to assert tolling arguments that must be resolved on an individualized basis for each class member. The Bank asserts that these individual questions of tolling will predominate over any issues common to the class.

The Supreme Court has recognized that Rule 23(a)(2)'s commonality requirement is "subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions common to the class predominate over other questions." Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 609 (1997). The predominance inquiry is "far more demanding" than Rule 23(a)'s commonality requirement. Id. at 624. Therefore, conducting a separate commonality inquiry in a Rule 23(b)(3) case is unnecessary, and the Court will bypass the commonality requirement and focus its ruling on the predominance inquiry. See id. at 609.

Plaintiffs seeking class certification have the burden of demonstrating under Rule 23(b)(3) that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." This predominance inquiry necessarily requires a limited examination of the underlying elements necessary to establish liability for plaintiffs' claims. See Blades v. Monsanto Co., 400 F.3d 562, 569 (8th Cir. 2005). The plaintiff also bears the burden of supplying the court with the required choice of law analysis. See Castano, 84 F.3d at 741; In re Ford Motor Co. Vehicle Paint Litig., 182 F.R.D. 214, 221-22 (E.D. La. 1998); Walsh v. Ford Motor Co.,

807 F.2d 1000, 1017 (D.C. Cir. 1986); see also CONTE & NEWBERG, NEWBERG ON CLASS ACTIONS, § 13:36 (4th ed. 2002).

(1)    M&S's Motion to Decertify Counts XVI and XVIII

Although it is common for parties seeking to challenge class certification to raise choice of law questions as part of the predominance inquiry, neither M&S nor plaintiffs discuss choice of law issues with respect to plaintiffs' claims against M&S for conspiracy to defraud and negligent misrepresentation (Counts XVI and XVIII).[4]  Apparently both parties agree that regardless of the state substantive law that is applied, the law will require as an element of the claims that plaintiff relied on the alleged misrepresentations.    M&S argues that to prevail on the negligent misrepresentation or conspiracy to defraud claims, each class member must show on an individual basis that he relied on the representations of defendant.  Because this showing must be made on an individual basis for each plaintiff, M&S argues that issues of individual reliance predominate over issues common to the class.

M&S cites three cases in support of its contention:  Young v. Nationwide Life Ins. Co., 183 F.R.D. 502, 507 (S.D. Tex. 1998), In re Jackson Nat. Life Ins. Co. Premium Litig., 183 F.R.D. 217,

_____

[4]The "significant contacts" analysis of the Restatement (Second) of Conflicts of Law, § 148 (1977), governs the choice of law for fraud and misrepresentation cases in Missouri.  See Reis v. Peabody Coal Co., 997 S.W.2d 49 (Mo. App. 1999).  Section 148 directs the court to consider the following contacts to determine which state has the most significant relationship to the claims: (a) where plaintiff acted in reliance; (b) where the plaintiff received the representations; (c) where the defendant made the representations; and (d) the domicile, residence, and place of business of the parties.  See Restatement (Second) Conflict of Laws § 148(2).  Comment (j) to § 148 provides that if any of these two contacts are located wholly in a single state (not including defendant's place of business), this will usually be the state of the applicable law.  This analysis weighs heavily in favor of the state in which the plaintiff received and acted in reliance on the representations of the defendant. See Restatement (Second) Conflict of Laws § 148, comment j.  Application of Missouri's choice of law doctrine to plaintiffs' state law fraud and misrepresentation claims against M&S (Counts XVI and XVIII) would likely lead to the application of various states' substantive laws.

222 (W.D. Mich. 1998), and <u>Zarella v. Minnesota Mut. Life Ins. Co.</u>, 1999 WL 226223, *8 (R.I. Super. Ct. Apr. 14, 1999). These courts held that a showing of reliance was critical to plaintiffs' common law fraud and misrepresentation claims. Because the proof of reliance would be required of each individual class member in order for the common law claims to proceed, the courts found that individual issues predominated, precluding class certification.

Plaintiffs respond that many courts have certified pendant state law claims of negligent misrepresentation in federal securities law class actions, and cite <u>In re Towers Fin. Corp. Noteholders Litig.</u>, 177 F.R.D. 167 (S.D.N.Y. 1997), <u>In re Regal Commun. Corp. Sec. Litig.</u>, 1995 WL 550454 (E.D. Pa. Sept. 14, 1995), and <u>In re ORFA Sec. Litig.</u>, 654 F. Supp. 1449 (D.N.J. 1987). Plaintiffs also distinguish the cases cited by M&S on the basis that these cases involved oral representations, as opposed to the written representations at issue in this case. (Resp. at 17).

Plaintiffs' reliance on <u>In re Towers</u> for the proposition that many courts have certified pendant state law claims of negligent misrepresentation in securities fraud class actions is misplaced. <u>In re Towers</u> involved an uncontested class certification motion, to which no objections were filed in response to a magistrate judge's recommendation that the district court grant the motion to certify the class. Moreover, in certifying the class, the court did not discuss the question of the class members' individual reliance on the representations at issue. The court summarily concluded the "plaintiffs' state law claims . . . arise out of the same conduct as the federal claims." <u>Id.</u> at 172. In <u>In re Towers</u>, the court did not resolve the issue that arises in the instant case, whether individual issues of class members' reliance on the alleged misrepresentations predominate over class issues.

Plaintiffs' reliance on <u>In re Regal Commun. Corp.</u> is also not persuasive. In <u>In re Regal Commun. Corp.</u>, the district court certified the plaintiffs' pendant state law claims of negligent

representation, citing the trend of district courts in the Third Circuit to certify these claims in securities fraud cases. The court was persuaded by the "Third Circuit's comments and preference for erring in favor of class certification." Id. at *10. The district court reasoned that if reliance by individual class members is disputed, the court could use separate hearings, special masters, and class questionnaires to resolve these issues. However, the necessity of using such mechanisms to resolve individual issues is precisely the type of individualized inquiry that weigh in favor of finding that individual issues predominate over class issues. Moreover, the Eighth Circuit has not expressed the Third Circuit's preference for class certification, especially as it relates to the "rigorous inquiry" into the predominance of class claims. See, e.g., Blades v. Monsanto Co., 400 F.3d 562, 569-72 (8th Cir. 2005) (affirming district court's order denying class certification where case involved individualized, fact-intensive inquiry requiring consideration of factors unique to each class member); In re St. Jude Med., Inc., 425 F.3d 1116, 1119-22 (8th Cir. 2005) (overruling class certification of consumer protection class because district court did not conduct sufficient conflicts of law analysis); Jensen v. SIPCO, Inc., 38 F.3d 945, 953 (8th Cir. 1994) (stating that estoppel claim that required proof of individual class member's reliance on material misrepresentation "is not suitable basis for class-wide relief").[5]

In addition to the Eighth Circuit authority denying class certification in cases involving individualized, fact-intensive inquiry, several district courts in the Eighth Circuit have also found that pendant state law claims involving fraud and negligent misrepresentation are not readily susceptible

---

[5]Plaintiffs cite two additional cases from district courts in the Third Circuit that have certified negligent misrepresentation claims despite the individual inquiry required into each class member's reliance. See Resp. at 16, citing In re ORFA Sec. Litig., 654 F. Supp. 1449 (D.N.J. 1987) and In re Bell Atlantic Corp. Sec. Litig., 1995 WL 733381 (E.D. Pa. 1995). Because the Eighth Circuit has not expressed the Third Circuit's preference for erring in favor of class certification, especially as it relates to the predominance inquiry, the Court does not find these cases persuasive.

to classwide proof.  See Cunningham v. PFL Life Ins. Co., 1999 WL 33656879, *4-5 (N.D. Iowa Aug. 25, 1999) (denying class certification, finding "[e]ach putative plaintiffs' reliance on the alleged misrepresentations raises important individualized questions"); In re Hartford Sales Prac. Litig., 192 F.R.D. 592, 605 (D. Minn. 1999) ("[T]he Court finds that it would be virtually impossible—and certainly impracticable—to resolve on a classwide basis questions of individual reliance on the part of class members.); see also Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331 (4th Cir. 1998); Stephenson v. Bell Atlantic Corp., 177 F.R.D. 279 (D.N.J. 1997); Williams v. Balcor Pension Investors, 150 F.R.D. 109 (N.D. Ill. 1993).

Finally, plaintiffs cite Kirkpatrick v. J.C. Bradford & Co., 827 F.2d 718, 723-24 (11th Cir. 1987) as "expressly rejecting" defendants' argument that individual reliance on the prospectus precludes certification.  (Resp. at 17).  Although the Kirkpatrick court stated that individual reliance did not preclude certification, this was only with respect to plaintiffs' federal securities law misrepresentation claims under Section 10(b) and Rule 10b-5 of the Securities Exchange Act of 1934, not plaintiffs' pendant state law misrepresentation claims.  The Court relied heavily on the federal fraud-on-the-market theory as a basis for class treatment, a theory that has no counterpart in the common law.  As to the plaintiffs' pendant state law claims, the Eleventh Circuit upheld the district court's denial of class certification, stating "[w]e agree with the district court that the state law claims would require application of the standards of liability of the state in which each purchase was transacted."  Id. at 725.  Contrary to plaintiffs' assertion, the Kirkpatrick court did not "expressly reject" the argument made by defendants here, but instead upheld the denial of class certification of plaintiffs' various state law claims.

The problem of proving individual reliance on the alleged misrepresentations on a classwide basis are highlighted in the instant case by the testimony of the class representatives. Plaintiff Ducommun testified that she never reviewed the prospectus; Plaintiff Duever testified that she did not review the entire prospectus; and Plaintiff Earle does not know if she reviewed the prospectus prior to her purchase. (M&S Mem. at 17-18). Therefore, as evidenced by the named representatives, the focus of plaintiffs' misrepresentation and fraud claims will be on whether defendants misrepresented and omitted material information in their prospectus and whether these alleged misrepresentations and omissions had an impact on the class members. The Court finds that issues regarding the individual class members' receipt, review, and reliance on the prospectus in making the decision to buy the bonds at issue predominate over the common questions of fact with respect to plaintiffs' pendant state law claims premised on fraud and misrepresentation. Therefore, the Court grants defendant M&S's motion to decertify Counts XVI (Conspiracy to Defraud) and XVIII (Negligent Misrepresentation) pursuant to Federal Rule 23.

(2)    The Bank's Motion to Decertify Count XIX (Breach of Fiduciary Duty) and Count XX (Assumpsit)

Typically, to determine whether common questions of law predominate, the court must first conduct a choice of law inquiry to determine the applicable law. See Castano, 84 F.3d at 741-43. A federal court adjudicating supplemental state law claims that are pendant to a federal claim must apply the choice of law rules of the forum state. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Rogers v. Grimaldi, 875 F.2d 994, 1002 (2d Cir. 1989); Shields v. Consolidated Rail Corp., 810 F.2d 397, 399 (3d Cir. 1987). Accordingly, Missouri's choice of law rules govern plaintiffs' state law claims against the Bank for breach of fiduciary duty (Count XIX) and assumpsit

(Count XX). To determine choice of law issues in a tort action, Missouri courts apply the "most significant relationship" test set out in § 145 of the Restatement (Second) of Conflict of Laws. See Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. banc 1969).

The Supreme Court has held an individualized choice of law analysis must be applied to each claim in a class action. See In re St. Jude Med., Inc., 425 F.3d at 1120 (citing Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 822-23 (1985)). Prior to certifying a multistate class action, the Eighth Circuit has held that federal district courts must engage in an in-depth choice of law analysis to determine whether multiple states' laws should be applied to the class claims. See In re St. Jude Med., Inc., 425 F.3d at 1120 (overruling district court's order certifying a class because the district court did not conduct a sufficient conflicts of law analysis prior to certifying the class); see also Castano, 84 F.3d at 741-43 ("A district court's duty to determine whether the plaintiff has borne its burden on class certification requires that a court consider variations in state law when a class action involves multiple jurisdictions."). This choice of law inquiry is part of the "rigorous analysis" of class certification issues required of the district courts. See General Tel. Co. v. Falcon, 457 U.S. at 161.

The Bank challenges plaintiffs' showing of predominance with respect to their claims for breach of fiduciary duty and assumpsit (Counts XIX and XX). The Bank argues that these claims will require the application of several states' laws, and therefore common issues of law do not predominate. The Bank argues that the Court must consider state law variations before certifying these counts for class treatment, citing In re St. Jude Med., Inc., 425 F.3d 1116 (8th Cir. 2005). The Bank further states that plaintiffs have the burden of establishing, "through an extensive analysis of state law variances, that class certification does not present insuperable obstacles." Duncan v. Northwest Airlines, Inc., 203 F.R.D. 601, 613-14 (W.D. Wash. 2001). The Bank asserts that the law

of the state in which the class member resides applies to plaintiffs' claims of breach of fiduciary duty and assumpsit. (Bank Mem. at 9). Because plaintiffs bear the burden of establishing that the state law variances do not present an obstacle to certification, the Bank seeks decertification of Counts XIX and XX. (Bank Mem. at 10).

In response, plaintiffs summarily conclude that Missouri law governs the breach of fiduciary duty claim.[6] Plaintiffs state that the relevant acts and omissions were committed in Missouri and the Bank's Servicing Agreement names Missouri for choice of law purposes.[7] "Consequently, it is Missouri that has the significant contact or significant aggregation of contacts, creating state interests such that choice of its law is neither arbitrary nor fundamentally unfair." (Resp. at 14). Plaintiffs also cite two cases in which other courts have held that the law of the forum governs the common law claims of the entire class in securities cases: In re ORFA Sec. Litig., 654 F. Supp. 1449 (D.N.J. 1987), and In re Worlds of Wonder Sec. Litig., 1990 WL 61951 (N.D. Cal. Mar. 23, 1990).

In its reply brief, the Bank conducts a choice of law analysis, and states that Missouri's choice of law doctrine applies, which will look to the substantive law of the state with the most significant relationship to the legal dispute. (Bank Reply at 10). However, the Bank then quotes Scheerer v. Hardee's Food Sys., Inc., 92 F.3d 702, 708 (8th Cir. 1996), for the proposition that there is a presumption in tort that the state with the most significant relationship is the state in which the injury occurred. (Bank Reply at 11). The Bank concludes that the injury to plaintiffs occurred in their

---

[6]        Plaintiffs do not address Count XX, which asserts an action in assumpsit.

[7]        Plaintiffs do not state how this agreement would eliminate the choice of law issue for plaintiffs' tort claims. Nor do plaintiffs attach a copy of the Bank's Servicing Agreement.

individual states of residence, and therefore the substantive law of these various states would apply to plaintiffs' state law tort claims.

Neither party has precisely analyzed the contacts that Missouri courts consider when deciding which state's law to apply to a particular claim. Plaintiffs did not analyze Missouri's choice of law doctrine, but instead summarily concluded that Missouri's law applied. The cases cited by plaintiffs in support of this proposition are distinguishable from the instant case. In <u>In re ORFA Securities Litigation</u>, the court determined that pursuant to New Jersey's choice of law analysis, the law of the state of incorporation applies to all claims regarding the breach of a corporate officer's duties. Accordingly, the Court applied New Jersey law to the class claims. Missouri's choice of law doctrine does not apply the law of the state of incorporation to claims of breach of fiduciary duty.

Likewise, in <u>In re Worlds of Wonder Securities Litigation</u>, the court found that courts in the Northern District of California presume that California law applies unless the defendants can conclusively demonstrate that the law of another state applies. Accordingly, the court applied California law to the class claims. Unlike California courts, Missouri courts do not presume that Missouri law applies. Unlike the cases cited by plaintiffs, controlling Eighth Circuit precedent requires the district court to conduct a thorough conflicts of law analysis with respect to each plaintiff class member before applying the law of the forum state. <u>See</u> <u>In re St. Jude Med., Inc.</u>, 425 F.3d at 1120.

For its part, the Bank analyzed Missouri's choice of law doctrine in its reply brief. However, the Bank incorrectly applied the doctrine to the facts of this case. Although the federal court will apply the choice of law doctrine of Missouri, the Bank is incorrect to presume that the state with the "most significant relationship" is the state in which the injury occurred. The <u>Scheerer</u> case on which the Bank relies was a personal injury case. In <u>Scheerer</u>, the court stated that "[i]n an action for a

personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties . . . ." Scheerer, 92 F.3d at 708. The court then quoted the Restatement (Second) of Conflict of Laws § 146, which is the precise section addressing personal injury torts, and stated the presumption that the law of the state in which the injury occurred is the state with the most significant contacts. The Bank takes this quotation out of the context of personal injury torts, and states that this presumption applies to all torts, including breach of fiduciary duty. (Bank Reply at 11). However, in both Scheerer and Dorman v. Emerson Electric Company, 23 F.3d 1354, 1358 (8th Cir. 1994), the case on which Scheerer relies, the presumption in favor of the substantive state law of the state in which the injury occurred was limited to claims of personal injury. This presumption does not carry over to all torts.

Missouri courts apply the "most significant relationship" test to determine the choice of law in general tort actions, including actions for breach of fiduciary duty. See Kennedy v. Dixon, 439 S.W.2d at 184; Restatement (Second) of Conflict of Laws § 145. Under this test, the identity of the state having the most significant relationship will depend upon the nature of the cause of action and upon the particular legal issue in dispute. See Restatement (Second) of Conflict of Laws, § 145. Contacts the courts consider in applying the most significant relationship test are (1) where the injury occurred; (2) where the conduct causing the injury occurred; (3) the residence or place of business of the parties; and (4) where the relationship between the parties is centered. These contacts are to be evaluated according to their importance with respect to the tort at issue. According to comment (e), in cases involving standards of conduct, i.e., breach of fiduciary duty, if the state of the conduct and the state of the injury are the same, this state will usually be the state of the applicable law. However, if these states differ and the place of injury bears little relation to the occurrence or the parties, the

place where defendant's conduct occurred will usually be given particular weight.  Id. at comment (e).

Likewise, when the primary purpose of the tort rule is to deter or punish misconduct, the place where

the conduct occurred has particular significance.  Id.  Finally, the importance of these contacts also

depends on the extent to which they can be grouped.  The state where contacts are grouped together

is particularly likely to be the state of applicable law if the defendant's conduct occurred there.

Neither the briefs submitted by the parties nor the Third Amended Petition provide information

sufficient for the Court to analyze which state has the most significant relationship to plaintiffs' claims

for breach of fiduciary duty and assumpsit.  Additionally, even assuming the Court could determine

the state with the most significant relationship to the plaintiffs' claims, neither party has presented any

information regarding whether there are variations in the state substantive laws governing breach of

fiduciary duty and assumpsit.  If the substantive areas of law are similar in the various states,

application of one state's law to all claims is the practical equivalent to the application of each state's

laws.  As the Supreme Court recognized, "[t]here can be no injury in applying [one state's] law if it

is not in conflict with that of any other jurisdiction connected to this suit."  Phillips Petroleum Co. v.

Shutts, 472 U.S. 797, 816 (1985).  It is plaintiffs' burden, as the class action proponent, to establish

that there are no conflicts between the common law of the various states at issue.  See, e.g., Castano,

84 F.3d at 741-43 ("A district court's duty to determine whether the plaintiff has borne its burden on

class certification requires that a court consider variations in state law when a class action involves

multiple jurisdictions."); In re Ford Motor Co. Vehicle Paint Litig., 182 F.R.D. 214, 221-22 (E.D. La.

1998); Walsh v. Ford Motor Co., 807 F.2d 1000, 1017 (D.C. Cir. 1986) ("[N]ationwide class action

movants must creditably demonstrate, through an 'extensive analysis' of state law variances, that class

certification does not present insuperable obstacles.").

Because plaintiffs have failed to satisfy the requirements for certification of the pendant common law claims of breach of fiduciary duty and assumpsit contained in Counts XIX and XX, the Bank's motion to decertify the class as to these counts is granted.

(3)    <u>The Bank's Motion to Decertify Counts I, II, III, X, and XIV<br>Based on Individualized Tolling Inquiries</u>

Counts I, II, III, X, and XIV assert breach of contract claims based upon conduct occurring in May 1995 through November 1995 related to the issuance or authentication of the bonds. Each of these counts asserts breach of a contractual obligation under the Indenture. The Indenture specifies that Delaware law applies to all claims arising out of that document. <u>See</u> Indenture at ¶ 30. Under Delaware law, the statute of limitations for breach of contract is three years. <u>See</u> 10 Del. Code Ann. 8106. The original petition in this case was filed on November 11, 1999, more than three years after the last conduct alleged in Counts I, II, III, X, and XIV occurred. The parties apparently agree for purposes of the class decertification motion that Delaware's three-year statute of limitations applies to the class members' claims alleged in Counts I, II, III, X, and XIV.[8] The parties disagree regarding whether individualized questions of tolling will predominate over issues common to the class.

In its motion to decertify, the Bank argues that Counts I, II, III, X, and XIV for breach of contract must be decertified because these claims are presumptively time barred by Delaware's three-year statute of limitations. The Bank asserts that in order for these claims to survive this affirmative defense, plaintiffs will have to establish that the statute of limitations is subject to a tolling provision. The Bank urges decertification because individual issues regarding whether each class member's claims

---

[8]    Plaintiffs state that the question of whether Delaware law controls the statue of limitations has not been adjudicated. (Resp. at 20 n.4). Plaintiffs make no attempt to argue that any other state law controls, and address only Delaware law in their response.

are tolled will predominate over class issues. (Bank Mem. at 12). Plaintiffs respond that the tolling arguments are susceptible to classwide treatment because plaintiffs' claims do not begin to run until plaintiffs learned of the Bank's wrongful conduct. Plaintiffs argue that because they were entitled to rely on the Bank as a fiduciary to notify them of the default, their causes of action for breach of contract did not accrue until they received such notice from the Bank. Plaintiffs assert that they never received notice from the Bank, and consequently their causes of action did not accrue until 1998 when the first bonds became due and they incurred actual damages. (Resp. at 21). According to plaintiffs' theory, all class members assert the same tolling arguments and all class members have the same date of accrual for their claims. Thus, individual issues regarding the tolling of the statute of limitations do not exist and class certification is appropriate.

Several courts have held that possible differences in the application of a statute of limitations to individual class members does not preclude certification of a class action so long as the claims meet the necessary commonality and predominance requirements. See, e.g., Waste Management Holdings, Inc. v. Mowbray, 208 F.3d 288, 296 (1st Cir. 2000) ("possible differences in the application of a statute of limitations to individual class members . . . does not preclude certification of a class action so long as the necessary commonality and . . . predominance are otherwise present"); Williams v. Sinclair, 529 F.2d 1383, 1388 (9th Cir. 1975), cert denied, 426 U.S. 936 (1976) (reversing district court and finding that "existence of a statute of limitations issue does not compel a finding that individual issues predominate over common ones"). These courts have found that the mere fact that the statute of limitations defense may affect class members differently does not compel a finding that individual issues predominate over class issues. As long as a sufficient "constellation of common issues" binds class members together, variations in the sources and application of statutes of limitation

will not automatically foreclose class certification under Rule 23.  <u>Waste Management</u>, 208 F.3d at 296.

Based on their response to the Bank's motion to decertify, plaintiffs intend to rely on the tolling doctrine set out by Delaware courts in <u>Isaacson, Stolper & Co. v. Artisans' Sav. Bank</u>, 330 A.2d 130, 133-34 (Del. 1974), <u>Kahn v. Seaboard Corp.</u>, 625 A.2d 269, 275 (Del. Ch. 1993), and <u>Price v. Wilmington Trust Co.</u>, 1995 WL 317017 (Del. Ch. May 19, 1995).  According to this doctrine, plaintiffs state that their breach of contract actions did not accrue against the Bank until they knew or had reason to know of the alleged wrongful conduct.  Because plaintiffs allege the Bank had a legal duty to provide notice to the plaintiffs of any default under the Indenture, plaintiffs state that they were entitled to rely upon the Bank to provide them notice of the default.  The Bank did not provide such notice at any time prior to 1998, when the first bonds became due, and therefore the statute of limitations was tolled until this time.  (Resp. at 21).

The Court notes that the Bank has filed a motion for summary judgment on Counts I, II, III, X, and XIV based on its statute of limitations defense.  The merit of the Bank's statute of limitations tolling doctrine will be decided by the Court in ruling on the Bank's summary judgment motion.  For purposes of the Bank's motion to decertify the class with respect to Counts I, II, III, X, and XIV, the Court's inquiry is limited to the question of whether plaintiffs have satisfied the requirements of Rule 23, <u>i.e.</u>, whether individual issues related to the tolling inquiry negate commonality and predominance. <u>See</u> <u>Eisen</u>, 417 U.S. at 178.  Therefore, the Court's decision on decertification does not reflect its analysis of whether plaintiffs can ultimately succeed on their tolling theory.

Rather, the Court finds only that plaintiffs' breach of contract claims and their tolling theory are susceptible to classwide treatment.  As asserted in their response to the Bank's motion, plaintiffs'

tolling theory relies on the Bank's alleged lack of notice of the default. Plaintiffs' theory does not rely on the plethora of varying factors outlined by the Bank related to when each plaintiff was aware of the injury. The Court finds that this lack of notice of the default can be proved on a classwide basis, because it pertains to the uniform actions the Bank took with respect to the plaintiffs' class as a whole. See, e.g., In re Monumental Life Ins. Co., 365 F.3d 408, 421 (5th Cir. 2004) (issue of constructive notice hinged on whether uniformly dispersed national media reports placed plaintiffs on notice of defendants' alleged wrongdoing, such that constructive notice could be determined on a classwide basis). The Court holds that potentially divergent questions of equitable tolling do not negate commonality and predominance in this action.

### E.     Typicality and Intra-Class Conflict

The Eighth Circuit has defined the typicality requirement simply as requiring that "other members of the class . . . have the same or similar grievances as the plaintiff." Alpern v. Utilicorp United, Inc., 84 F.3d 1525, 1540 (8th Cir. 1996) (citing Donaldson v. Pillsbury Co., 554 F.2d 825, 830 (8th Cir.), cert. denied, 434 U.S. 856 (1977)); see also DeBoer v. Mellon Mort. Co., 64 F.3d 1171, 1174-75 (8th Cir. 1995). The burden of establishing typicality is fairly easily met by named plaintiffs so long as other class members have similar claims. See DeBoer, 64 F.3d at 1175. Factual variations in the representative plaintiffs' claims will not normally preclude class certification if the claim arises from the same course of conduct as the class claims and gives rise to the same legal theory.

In Alpern v. UtiliCorp United, Inc., 84 F.3d at 1540-41, the Eighth Circuit held that the district court abused its discretion by denying class certification of a securities class action based on the typicality requirement. In Alpern, the named plaintiff had purchased securities as part of the

defendant's dividend reinvestment plan. He asserted claims arising out of these purchases, but also sought to represent a class of plaintiffs who had purchased securities on the open market. The district court denied plaintiff's motion for class certification, finding the named plaintiff's claims atypical of the claims of the class of the open market purchasers. The Eighth Circuit overruled this decision, ruling that the named plaintiff's participation in the dividend reinvestment plan did not render his claims atypical of the class including open market purchasers. The Court found that the same set of events underlay all of the claims of the class members. Because the named representative's claim invoked the same legal theory—securities fraud by making knowing misleading statements or omissions—the named plaintiff's claims were typical of the class because both challenged the defendant's course of conduct under the securities laws. Id. at 1540.

M&S argues that the claims of several of the class representatives are not typical of the claims of the putative class because they involve individual facts peculiar only to the class representatives. For support, M&S cites class representative Commercial Mortgage's vote for the sale of the collateral for the bonds and its agreement to liquidate the collateral. M&S states that because Commercial Mortgage voted for the sale of the collateral, it cannot represent class members who challenged this sale. Additionally, M&S asserts that several representative plaintiffs were aware of the problems with the bonds as early as 1996, and therefore their claims are not typical of the class.

The Court finds the mere fact that some of the named plaintiffs might have voted for the sale of the collateral or agreed to liquidate the stock does not render them atypical of the class. Nor are the named plaintiffs atypical because they allegedly knew of the problems with the bonds. The named plaintiffs' claims arise from the same event or course of conduct as the class claims. Plaintiffs seek to recover damages for the losses they incurred as a result of the default on ALCT bonds issued in the

amount of approximately $14 million. Plaintiffs' claims are based on defendants' alleged failure to perform various duties in conjunction with the issuance of these bonds, the operation of the bond program, and the default. The named plaintiffs' claims are typical of the class claims because both challenge defendants' actions and course of conduct with respect to these bonds.

Finally, the Bank argues that Count IV for Violation of Indenture Relating to Post-Default Dealings with Lease Residuals must be decertified because some of the class members voted against the liquidation of the leases and some voted for the liquidation of the leases. The Bank alleges that internal class conflict exists between these two groups of bondholders. To the extent any conflict exists between these bondholders, these conflicts can be addressed easily by the creation of two subclasses—those who voted for the liquidation (417 class members) and those who voted against the liquidation or abstained from voting (49 class members). The presence of this alleged intra-class conflict does not prevent Count IV from satisfying the commonality and predominance requirements for class certification.[9]

## F.    Federal Rule 23(g)

Federal Rule 23(g) requires the court certifying a class to appoint class counsel, and sets out the criteria the court must consider in its appointment. These criteria include: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions; (3) counsel's knowledge of applicable law; and (4) the resources counsel will

---

[9]    The Bank also argues that intra-class conflict exists "to the extent the wrongful conduct includes distributing 'available funds to all Bondholders on a pro rata basis, rather than paying in full the first Bonds to mature.'" (Bank Mem. at 16). The Bank's quote is found in paragraph 34 of the plaintiffs' petition, which has no association with Count IV. In fact, Count IV does not allege any facts that would support the pro rata distribution of funds as a basis for liability. The Court rejects this alleged intra-class conflict as entirely theoretical and unsupported by the allegations of the petition.

commit to the representation. This inquiry is especially pertinent to this case because the Missouri Supreme Court issued a writ of prohibition on August 24, 2004, requiring the trial court to adopt an appropriate remedy to a conflict of interest between class counsel and the class. See State ex rel. Union Planters Bank v. Kendrick, 142 S.W.3d 729, 741-42 (Mo. 2004). On November 24, 2004, presumably as a result of this writ, class counsel withdrew from its representation and current counsel entered as attorneys for the class.

In its motion to decertify, the Bank suggests that current class counsel was recruited and hired by the prior class counsel, rather than being chosen by the class representatives. The Bank also suggests that current class counsel are inadequate because they have made no effort to recover $100,000 that prior class counsel received for pursuing the class claims. Additionally, the Bank alleges that current class counsel delayed in serving the underwriter and in serving notice to the class. (Bank Mem. at 17-18). These allegations highlight the importance of conducting a Rule 23(g) inquiry to appoint class counsel, an inquiry without counterpart in Missouri law.

The advisory committee notes to Rule 23 suggest that applicants for appointment as class counsel should file an application for appointment or address the issue in the motion for class certification. See Fed. R. Civ. P. 23, Advisory Committee Notes, 2003 Amendments. Attorneys for plaintiffs have not filed an application for appointment as class counsel. Plaintiffs' motion for class certification was filed by the former attorneys for plaintiffs, and does not address current counsel's qualifications to represent the class. The only mention in the record of current counsel's qualifications as class counsel is the following paragraph from plaintiffs' response to defendants' motions to decertify:

> [C]urrent counsel has done significant work in this case over a period of over two years. Moreover, Plaintiffs' attorneys have sufficient experience to fairly and adequately represent the class. Their knowledge of the applicable law has been tested in the circuit court and in the federal district court, and not found wanting. In addition, current counsel is able to muster the resources necessary in representing the class.

(Resp. at 13).

These conclusory statements do not satisfy the requirement that the district court conduct a "rigorous analysis" of the requirements of Rule 23(g). Although Missouri Rule 52.08, under which this class was certified, and Federal Rule 23 generally parallel each another, Missouri Rule 52.08 does not have a counterpart to Rule 23(g).[10] Pursuant to Rule 23(g), this Court must evaluate and appoint class counsel. The parties have not provided the Court with sufficient information to evaluate current class counsel under Rule 23(g). Accordingly, the Court will order plaintiffs' counsel to file a Motion for Appointment as Class Counsel in accordance with Federal Rule 23(g) within ten (10) days of this Order.

## III. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that defendant Regions Bank's Motion to Decertify the Class Action (Doc. 47), defendant Marshall & Stevens, Inc.'s Motion to Decertify the Class Action (Doc. 45), and defendants Michael J. Doster, Doster, Robinson, James, Hutchison & Ullom, P.C.'s Motion to Decertify the Class Action (Doc. 56) are **GRANTED** in part and **DENIED** in part.

---

[10] Subsection (g) was added to Rule 23 through the 2003 amendments to the Federal Rules of Civil Procedure, which took effect December 1, 2003. This case was removed to this Court on June 15, 2005. Based on the Supreme Court's Order adopting the 2003 amendments, Rule 23(g) applies to these proceedings. See Order of Supreme Court of the United States Adopting and Amending Rules, Mar. 27, 2003; see also Fed. R. Civ. P. 81(c).

**IT IS FURTHER ORDERED** that the Motions to Decertify are **GRANTED** to the extent that Counts XIX, XX, XVI, and XVIII shall be decertified, and **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that plaintiffs' counsel shall file a Motion for Appointment as Class Counsel in accordance with Federal Rule 23(g) within ten (10) days of this Order. Failure to comply timely with this order may result in the dismissal of this action with prejudice.


_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**


Dated this 15th day of February, 2007.